UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMARCUS ANTWONE CROWLEY, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:23-CV-59-HAB-SLC |
| GALPERIN, et al., | |
| Defendants. | |

OPINION AND ORDER

Jamarcus Antwone Crowley, a prisoner without a lawyer, moves for a preliminary injunction. (ECF 5.) Specifically, he seeks an order requiring that he be immediately taken to an outside hospital for treatment for colon and prostate cancer. The court ordered a response from the Warden of Allen County Jail, which has been filed. (ECF 17.) By operation of Northern District of Indiana Local Rule 7-1(d)(3)(B), any reply by Mr. Crowley was due April 6, 2023. That deadline has passed and no reply was filed. The matter is now ripe for adjudication.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions" requiring the defendant to take affirmative acts are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the correctional context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also*

*Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief in the correctional setting).

Because Mr. Crowley is a pretrial detainee, his rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Detainees are entitled to adequate medical care. *Id.* at 353-54. To establish a Fourteenth Amendment violation, a detainee must show: "(1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm." *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (citation and internal quotation marks omitted). In determining whether a challenged action is reasonable, the court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). It is not enough for the plaintiff to show "negligence or gross negligence." *Miranda*, 900 F.3d at 353-54.

Mr. Crowley alleges in his complaint that prior to his incarceration, he was diagnosed with colon and prostate cancer and was receiving chemotherapy, radiation, and other treatment. (ECF 4 at 1-2.) He claims the jail doctor, Dr. Mikhail Galperin, has not given him any treatment since his arrival at the jail in January 2023, other than Tylenol. (*Id.*) The court granted him leave to proceed on a Fourteenth Amendment claim for damages against Dr. Galperin in his personal capacity and a claim against the Warden in his official capacity for injunctive relief. (*Id.* at 7.)

3

The Warden has submitted Mr. Crowley's jail medical records in response to the motion. (ECF 17-1; ECF 17-2.) Those records reflect that Mr. Crowley is 39 years old and arrived at the jail on January 3, 2023.[1] (ECF 17-1 at 1, 6, 87.) He underwent a medical screening and told the provider he was currently taking the pain medication Celebrex and other medications, had a history of cocaine use (as recently as January 1, 2023), and had surgery a month earlier on his colon and testicles. (*Id.* at 7.) He reported that the procedure had been done in Indianapolis but he could not recall the name or address of the facility where it had been performed, nor could he remember the names of any of his doctors or the name of his pharmacy. (*Id.* at 6-7, 104.) He was told that jail medical staff could not continue any treatment he had been receiving without this information. (*Id.* at 104.) Dr. Galperin subsequently approved Mr. Crowley to continue the Celebrex if his family brought the medication to the jail. (*Id.*)

The day after his arrival, a medical provider spoke with him again about trying to obtain records documenting his medical history. (*Id.*) He reported that he was going to call his mother that day and ask her for the information. (*Id.*) He later told the provider that his mother did not pick up the phone when he called, but said when he obtained the information he would send a message to the medical department through his tablet. (*Id.*)

---

[1] Some of the records submitted pertain to periods in 2019, 2020, and 2021 when Mr. Crowley was incarcerated at the jail. The court focuses its inquiry on the current period of incarceration, which began in early January 2023.

A few days later, Mr. Crowley reported that he was experiencing vomiting and bleeding from his rectum and demanded to go to the hospital. (*Id.* at 104, 124.) He claimed to have been diagnosed with cancer by an outside physician and in need of immediate treatment. (*Id.*) The provider noted that he was a "very poor historian" because he still could not provide any information about his outside doctors or the date he was allegedly diagnosed with cancer. (*Id.*) His vital signs were taken and the information conveyed to Dr. Galperin, who gave an order for an anti-nausea medication and Tylenol. (*Id.*) A stool sample was also taken, but for unknown reasons the laboratory did not receive it. (*Id.*) Dr. Galperin ordered another stool sample, which returned negative for abnormalities. (*Id.*) The doctor directed staff to continue to try to obtain Mr. Crowley's outside medical records. (*Id.*) Mr. Crowley was ultimately able to learn the names of his doctors and pharmacy through family members, and on January 11, 2023, he signed a release allowing jail staff to obtain his records. (ECF 17-2 at 16.)

In early February 2023, jail medical staff was able to obtain a copy of Mr. Crowley's outside medical records. (*Id.* at 101, 124-25.) Those records reflect that he underwent a colonoscopy in November 2022 and was diagnosed with hemorrhoids and non-cancerous polyps. (*Id.* at 124.) Recommendations were made about dietary changes with "no mention of surgery." (*Id.* at 125.) He also saw a urologist in 2022 and was diagnosed with "resolving orchitis and varicocele."[2] (*Id.* at 124; ECF 17-2 at 42-65.) Dr.

---

[2] "Varicocele" refers to an "enlargement of the veins of the spermatic cord." TABER'S MED. DICTIONARY, *Varicocele,* avail. at https://www.tabers.com/tabersonline/view/Tabers-Dictionary/764830/all/varicocele. "Orichitis" refers to "[i]nflammation of a testes due to trauma, ischemia, metastasis, mumps, or infection elsewhere in the body." TABER'S MED. DICTIONARY, *Orchitis, avail. at* https://www.tabers.com/tabersonline/view/Tabers-Dictionary/749047/all/orchitis?q=orchitis.

5

Galperin examined Mr. Crowley on February 3, 2023, and prescribed Preparation H suppositories for hemorrhoids, a stool softener, Flomax for prostate issues, and a specific type of underwear for "scrotal support." (ECF 17-1 at 125; ECF 17-2 at 25.) The doctor prescribed another medication as well, but Mr. Crowley refused this medication on three separate occasions. (ECF 17-2 at 33-35.)

On February 9, 2023, it was reported to medical staff that Mr. Crowley was refusing to use the suppositories. (ECF 17-1 at 125.) When asked, he claimed that it was on the advice of his lawyer "to demonstrate that he is being denied medical care." (*Id.*) Dr. Galperin examined him and reviewed his medical records again. (*Id.*) The doctor advised him to try the suppositories, which Mr. Crowley confided in him were "embarrassing" to use in front of other inmates. (*Id.*) The doctor offered for nursing staff to bring him to the medical unit to insert the suppositories, and he agreed to this plan. (*Id.*)

Based on the above, Mr. Crowley has not met the high standard for obtaining a preliminary injunction. To the contrary, the medical records reflect that jail medical providers have been attentive to Mr. Crowley's medical needs, taken his subjective complaints seriously, examined him, conducted diagnostic testing, prescribed medications, and made efforts to obtain his outside medical records despite his initial lack of cooperation. Those records do not bear out his assertions that he has been diagnosed with cancer for which he needs chemotherapy and radiation. They also reflect that Mr. Crowley has not been fully cooperative or compliant with medical staff. He cannot be permitted to "engineer" a constitutional violation by disregarding the

6

advice of his medical providers and then complain that his symptoms are not getting better. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005). The court notes additionally that even though Mr. Crowley failed to use the suppositories at first, Dr. Galperin made efforts to ensure that they could be administered in a manner that eased any embarrassment he might suffer. Far from establishing objectively unreasonable conduct, this suggests care for Mr. Crowley's well-being.

Although Mr. Crowley clearly disagrees with the treatment decisions of medical staff and believes himself to be in need of hospitalization, he is not competent to make his own diagnosis or decide what treatment is warranted. *See Lloyd v. Moats*, 721 F. App'x 490, 494–95 (7th Cir. 2017) ("[Plaintiff's] disagreement is irrelevant. He is not competent to diagnose himself, and he has no right to choose his own treatment."). He has not demonstrated a likelihood of success on his claim that medical staff acted in an objectively unreasonable fashion in connection with the care he has received, or that he will be irreparably injured if immediate injunctive relief is not granted. Therefore, his motion for a preliminary injunction will be denied.

Two additional procedural matters must be addressed. The Warden moves to seal his response to the motion and the accompanying medical records. However, "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). As a result, "very few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002).

7

The court agrees with the Warden that the medical records attached to the response contain personal identifying information and sensitive medical information (a portion of which is irrelevant to the issues in this case), which are appropriately kept out of the public record.[3] *See* Fed. R. Civ. P. 5.1. However, the Warden's memorandum does not contain personal identifying information or similar types of confidential information. Although the response contains information about Mr. Crowley's medical treatment, Mr. Crowley has put his health directly at issue by filing this lawsuit claiming he is not receiving adequate treatment for his medical problems. *Baxter Int'l.*, 297 F.3d at 546. The court also considers that there is already a considerable amount of detail about his health in the public record via the complaint and the screening order. (ECF 2, 4.) The court finds no basis to seal the Warden's response to the motion for a preliminary injunction. The motion will be granted in part and denied in part, and only the exhibits will be allowed to remain under seal.

Finally, Mr. Crowley filed two motions for leave to proceed in forma pauperis. (ECF 15, 18.) However, he has already been granted leave to proceed in forma pauperis in this case based on an earlier motion. (ECF 2, 3.) His current motions will be denied as unnecessary.

---

[3] In light of the Circuit's dislike of sealed documents, a better approach would have been for the Warden to redact the personal identifying information and submit only those medical records pertinent to the present lawsuit in redacted form. Given that the motion for preliminary injunction is being resolved by this order, and the fact that the medical records submitted are voluminous, the court will not require the Warden to go through that exercise in this instance.

For these reasons, the court:

(1) DENIES the plaintiff's motion for a preliminary injunction (ECF 5);

(2) GRANTS in part and DENIES in part the defendant's motion to seal (ECF 16);

(3) DIRECTS the clerk to unseal the defendant's response to the motion for a preliminary injunction (ECF 17), but to maintain the exhibits to the motion (ECF 17-1 and 17-2) under seal; and

(4) DENIES as unnecessary the plaintiff's motions for leave to proceed in forma pauperis (ECF 15, 18.)

SO ORDERED on April 17, 2023.

                                              s/Holly A. Brady
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT